## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| WOODBURY WIRELESS LLC,<br><br>    *Plaintiff,*<br><br> v.<br><br>T-MOBILE USA, INC.,<br><br>    *Defendant.* | **Civil Action No.** 2:24-cv-88<br><br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Woodbury Wireless LLC ("Woodbury Wireless" or "Plaintiff"), for its Complaint against Defendant T-Mobile USA, Inc.[1] ("T-Mobile" or "Defendant") alleges the following:

### NATURE OF THE ACTION

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 et seq.

### THE PARTIES

Plaintiff is a limited liability company organized and existing under the laws of the State of Texas, having its principal place of business at 102 East Lamar, Jasper, Texas 75951.

---

[1] Defendant T-Mobile USA, Inc. is a wholly-owned subsidiary of T-Mobile US, Inc. Plaintiff did not include T-Mobile US, Inc. as a defendant in this lawsuit because T-Mobile has in other recent cases represented that "T-Mobile US, Inc. is a holding company that does not provide any products, services, or networks." *Wireless Alliance, LLC v. T-Mobile US, Inc. and T-Mobile USA, Inc.,* No. 2:23-cv-00096, Dkt. 14 ¶ 3 n.3 (E.D. Tex. May 26, 2023); *see also id.,* Dkt. 13 (E.D. Tex. May 26, 2023) (stipulation of dismissal as to T-Mobile US, Inc.). Plaintiff reserves all rights to amend and add T-Mobile US, Inc. to this matter.

2.      Defendant T-Mobile USA, Inc. is a corporation organized and existing under the laws of Delaware.  Since November 22, 1999, T-Mobile has been registered to do business in Texas under Texas SOS file number 0012958406.  T-Mobile may be served through its registered agent for service, The Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

4.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

5.      Venue is proper in this judicial district under 28 U.S.C. §1400(b).

6.      Defendant is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

7.      Furthermore, this Court has general and specific personal jurisdiction over the Defendant under the laws of the State of Texas, due at least to their substantial business in Texas and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas.  T-Mobile has purposefully availed itself of the privileges of conducting business in the State of Texas and in this judicial district.  Venue is also proper in this district because T-Mobile has a regular and established place of business and has committed acts of infringement in this district.

8.      For example, T-Mobile maintains brick and mortar retail stores in this District located, among other places, in Marshall (*e.g.*, 1806 E End Blvd N, Ste 100, Marshall, TX 75670), Longview (*e.g.*, 2108 Gilmer Rd, Longview, TX 75604; and 116 E Loop 281, Ste 101,

Longview, TX 75605), Tyler (*e.g.*, 8942 S Broadway Ave, Ste 104, Tyler, TX 75703; 3320

Troup Hwy, Tyler, TX 75701; 3840 State Hwy 64 W, Tyler, TX 75704; and 1400 W Southwest

Loop 323, Ste 70, Tyler, TX 75701), Beaumont (*e.g.*, 5899 Eastex Freeway, Suite 100,

Beaumont, TX 77706; 3870 College St, Ste 100, Beaumont, TX 77701; and 5885 Eastex Fwy,

Beaumont, TX 77706), Lufkin (*e.g.*, 2906 Brentwood Dr, Ste 200, Lufkin, TX 75901), Sherman

(*e.g.*, 405 N US Hwy 75, Sherman, TX 75090), Texarkana (*e.g.*, 4210 Saint Michael Dr,

Texarkana, TX 75503; 3741 Mall Dr, Texarkana, TX 75501; and 2004 St Michael Dr,

Texarkana, TX 75503), Plano (*e.g.*, 2800 N Central Expy, Plano, TX 75074; 1110 Parker Road

East, Suite C, Plano, TX 75074; 1701 Dallas Pkwy, Plano, TX 75093; 7000 Independence

Parkway, Suite 168, Plano, TX 75025; 1913 Preston Rd, Ste 100, Plano, TX 75093; and 5800

Legacy Dr, Suite C-9, Plano, TX 75024), McKinney (*e.g.*, 1751 N Central Expy, Mckinney, TX

75070; 3650 W University Dr, Mckinney, TX 75071; 2811 Craig Dr, Ste 104, Mckinney, TX

75070; 3009 S Custer Road #300, Mckinney, TX 75070; 1521 W University Dr 130, Mckinney,

TX 75069; and 8910 State Hwy 121, Suite 200, Mckinney, TX 75070), and Frisco (*e.g.*, 3333

Preston Rd, Frisco, TX 75034; 5722 Eldorado Pkwy, Suite 120, Frisco, TX 75033; 2155

University Dr, Ste 150, Frisco, TX 75033; 7135 Preston Rd, Ste 200, Frisco, TX 75034; 2601

Preston Rd, Space #2200, Frisco, TX 75034; and 252 W Stonebrook Pkwy, Suite 570, Frisco,

TX 75034). *See*, *e.g.*, https://www.t-mobile.com/stores/locator (last visited February 8, 2024).

9.      T-Mobile also operates numerous brick and mortar retail stores in the Eastern

District of Texas.  These retail stores are physically located within this District, are regular and

established places of business of T-Mobile, and are used by T-Mobile to actively market and sell

services for the T-Mobile Wireless Networks that infringe the Patents-In-Suit.  By way of

example and without limitation, T-Mobile's website provides an "T-Mobile Locator" feature that shows the locations of such T-Mobile retail stores within this District.



*See, e.g.,* https://www.t-mobile.com/stores/locator (last accessed February 8, 2024).

       10.    T-Mobile also provides infringing products and services within the Eastern District of Texas, including those related to wireless coverage for Extended Range 4G LTE, 4G LTE, 5G (Extended Range 5G), 5GUC (Ultra Capacity 5G), 5G Advanced Network Services, home internet through 5G and other wireless services, and also advertises their availability within this District.  By way of example and without limitation, T-Mobile's website provides a "4G & 5G Coverage map" that advertises T-Mobile's current 4G and 5G wireless network coverage in and around Marshall, Texas.



*See, e.g.,* https://www.t-mobile.com/coverage/coverage-map?icid=MGPO_TMO_U_NETWORK_F9F56EBA73E7F9E236688 (last accessed February 8, 2024).

11.    T-Mobile also maintains a regular and established place of business in this District, including but not limited to multiple "T-Mobile Corporate Offices" located in Frisco, Texas, including at 7668 Warren Pkwy, Frisco, TX 75034, and at 3560 Dallas Pkwy, Frisco, TX 75034.



*See* https://www.google.com/maps/search/t-mobile+corporate+office,+in+frisco,+tx/ (last accessed February 8, 2024).

12.     T-Mobile has numerous employees who work in Texas, including within the Eastern District of Texas.  In addition to its many retail stores in Texas and in this District, T-Mobile, including at T-Mobile's many retail stores throughout the Eastern District of Texas and corporate offices in Frisco, Texas (as discussed above).

13.     T-Mobile has solicited business in the Eastern District of Texas, has transacted business within this District, and has attempted to derive financial benefit from the residents of this District, including benefits specifically related to T-Mobile's infringement of the Patents-In-Suit.

14.     In other recent actions, T-Mobile has either admitted or not contested that the Eastern District of Texas is a proper venue for patent infringement actions against T-Mobile. *See, e.g., Wireless Alliance, LLC v. T-Mobile US, Inc. and T-Mobile USA, Inc.,* No. 2:23-cv-00096, Dkt. 14 at ¶ 3, n.3 (E.D. Tex. May 26, 2023) ("T-Mobile does not contest . . . . venue is proper in this District . . . ."); *Solstice Wireless LLC v. T-Mobile USA, Inc., No. 4:22-cv-00723,* Dkt. 8 at ¶ 25 (E.D. Tex. Nov. 7, 2022) ("Defendants do not contest that venue is proper as to T-Mobile USA."); *Innovative Sonic Ltd., et. al. v. T-Mobile USA, Inc.,* No. 2:23-cv-00490, Dkt. 31 at ₱ 9 (E.D. Tex. Jan. 18, 2024) ("T-Mobile . . . . does not contest that venue is proper in this district.").

15.     Further, this Court has jurisdiction and proper authority to exercise venue over T-Mobile because T-Mobile also conducts substantial business in the State of Texas by procuring network equipment from Nokia, which T-Mobile has deployed as part of its infringing wireless network products and services .  *See e.g.*, https://www.sdxcentral.com/articles/interview/t-mobile-us-open-to-open-ran/2023/03/ (last accessed February 8, 2024) ("Those RAN decisions involved five-year contracts signed in early 2021 with . . . . Nokia to supply 5G RAN equipment

for T-Mobile US' $40 billion network upgrade."); https://www.t-mobile.com/news/business/t-mobile-and-nokia-collaborate-on-building-flexible-and-scalable-5g-networks (last accessed February 8, 2024); https://www.nokia.com/about-us/news/releases/2024/01/23/t-mobile-selects-nokia-to-improve-scalability-and-efficiency-for-5g-high-speed-internet-service/ (last accessed February 8, 2024).

16.     T-Mobile's infringement has thus caused substantial injury to Woodbury Wireless, including in this judicial district.

## **BACKGROUND**

### **The Invention**

17.     Roc Lastinger, John Spenik, and Brian C. Woodbury are the inventors of U.S. Patent Nos. 9,496,930 ("the '930 patent"; Exhibit A), 9,503,163 ("the '163 patent"; Exhibit B), 9,584,197 ("the '197 patent"; Exhibit C), 9,859,963 ("The '963 patent"; Exhibit D), 10,211,895 ("the '895 patent"; Exhibit E), 10,516,451 ("the '451 patent"; Exhibit F), and 11,108,443 ("the '443 patent"; Exhibit G) (collectively, "the Patents-In-Suit").  True and correct copies of the Patents-In-Suit are attached as Exhibits A-G.

18.     The Patents-In-Suit resulted from the pioneering efforts of Messrs. Lastinger, Spenik, and Woodbury (hereinafter "the Inventors") in the area of wireless communications using Multiple-Input Multiple-Output (MIMO) antennas and methods of operation.  These efforts resulted in the development of a method and apparatus for "Overlapping MIMO Physical Sectors" in the first decade of the 2000s.  At the time of these pioneering efforts, conventional wireless devices used to address interference resulting from noise sources by, for example, dividing the area of coverage into sectors, using a directional antenna, and using multiple antennas to provide redundancy and spatial diversity.  Those conventional wireless devices, however, would suffer reduced performance (such as a reduced signal-to-noise ratio, increased

signal and data errors, increased retransmission requests, increased interference, lower transmission rates, reduced signal strength, and the like) as a result of changes in noise sources, environment conditions, and equipment performance.  The Inventors conceived of the inventions claimed in the Patents-In-Suit as a way to respond to changes in noise sources, environmental conditions, and equipment performance by communicating through, just by way of example, the MIMO physical sector that provides increased performance.

19.     For example, the Inventors developed a MIMO-capable system that includes directional antennas positioned in such a way that the physical sectors of the antennas of a wireless device overlap.  The MIMO-capable system and methods enable the selection of a specific combination of antennas that operate as a single MIMO antenna and are oriented in a desired direction for communications.  Because the physical sectors of the selected antennas that operate as a single MIMO antenna overlap, these physical sectors form a "MIMO physical sector."  As a result of the inventions disclosed in the Patents-In-Suit, a wireless device is able to select an optimal combination of antennas in order to achieve a desired level of performance, even if noise sources or environmental conditions change.

20.     As an additional example, the inventions further provide for the assignment of any available channel to the selected antennas such that each individual antenna of a MIMO antenna operates on the same channel.  Moreover, the inventions disclose, among other things, overlapping MIMO physical sectors that use different channels such that the MIMO physical sectors may communicate with different wireless devices simultaneously with reduced mutual interference.  The inventions of the Patents-In-Suit thus enable wireless devices to reduce interference from noise sources by selecting a suitable channel, such as, for example, by selecting a channel that is different from the channel used by a noise source.

**Advantages Over the Prior Art**

21.     The patented inventions disclosed in the Patents-In-Suit, provide many different advantages over the prior art, and in particular improved the operations of wireless devices such as those used in wireless communications between computers, wireless cells, access points, wireless clients, mobile computers, hand-held devices, other mobile devices, and file servers. (*See* '930 patent at 1:30-39, 3:4-7.)  One exemplary advantage is improved performance of a wireless device as a result of the selection of an optimal combination of antennas to form a MIMO physical sector for wireless communications.  (*See e.g.*, *id.* at 4:14-37.)  While the MIMO physical sector that results from the combination of the selected antennas' physical sectors may be formed in a variety of ways, certain orientations and configurations of the MIMO physical sectors can provide increased performance compared to other orientations of other MIMO physical sectors under particular circumstances.  (*See e.g.*, *id.*)  Thus, the inventions' ability to position antennas to form MIMO virtual sectors and then selecting a specific combination of antennas to operate as a MIMO antenna (and thus form a MIMO physical sector), permits wireless devices to respond to changes in noise sources, environmental conditions, and other factors affecting their performance.  (*Id.* at 4:64-5:2, 5:3-14).

22.     In certain embodiments, the inventions  are highly adaptable because they permit a wireless device to use a flexible and dynamic array of criteria for selecting a MIMO physical/virtual sector for communications; for example, a wireless device may rely on the presence of noise sources, noise source channels used, signal-to-strength ratio, direction of primary data flow, signal quality, signal strength, and data throughput for its selection.  (*See e.g.*, *id.* at 10:65-11:4.)  Thus, when the performance of a selected MIMO physical sector deteriorates, a wireless device can adapt and select different antennas to operate as a MIMO antenna, thereby

allowing the device to adapt to changing conditions and increase the wireless device's performance.  (*See e.g.*, *id.* at 5:7-33.)

23.    Another exemplary advantage of the patented inventions is that a wireless device may reduce interference by assigning optimal channels for one or more MIMO physical sectors. (*See e.g.*, *id.* at 9:35-62, 11:28-65.)  Wireless devices may thus select a channel that is different from the channel used by noise sources or may assign a channel to each of its own MIMO physical sectors in a manner that reduces interference, thus providing a desired level of performance.  (*See e.g.*, *id.* at 11:28-65.)

24.    Because of these significant advantages that can be achieved through the use of the patented inventions, the Patents-In-Suit present significant commercial value for companies like T-Mobile.  Indeed, its wireless networks are touted for providing increased data speeds, reliability, and a uniform user experience.  The improvements in performance that are achievable through the pioneering developments described in the Patents-In-Suit are the cause.

### Technological Innovation

25.    The patented inventions disclosed in the various embodiments in the Patents-In-Suit resolve technical problems related to wireless communications, particularly problems related to the utilization of wireless devices with MIMO antennas.  As the Patents-In-Suit detail, one of the limitations of the prior art was the ineffective methods for adapting to changing sources of interference such as noise sources and environmental conditions.  (*See e.g.*, *id.* at 2:47-55, 4:64-5:2.)

26.    These are specific technological problems that persisted in this field, which were solved by the inventions disclosed and claimed in the Patents-in-Suit.  The claims of the Patents-In-Suit recite inventive concepts that are deeply rooted in engineering technology and overcome

problems specifically arising out of how to maintain desired performance levels in the face of dynamic conditions including changing noise sources, environmental conditions, or deteriorating equipment performance.

27.    In addition, the claims of the Patents-In-Suit recite inventive concepts that improve the functioning of wireless devices such as wireless cells, access points, wireless clients, wireless stations, cellular networks, mobile computers, hand-held devices, and portable wireless devices particularly by allowing such wireless devices to adapt to changing conditions in order to maintain an optimum level of performance.

28.    Moreover, the inventions recited by the claims of the Patents-In-Suit are not merely routine or conventional uses of general-purpose computer technology to implement an abstract idea.   Instead, the patented inventions disclosed in the Patents-In-Suit provide novel solutions to specific problems related to providing greater network performance such as by improving signal-to-noise ratio, reducing signal and data errors, decreasing retransmission requests, decreasing interference, increasing transmission rates, increasing signal strength, and the like.

29.    Nor do the patented inventions claimed in the Patents-In-Suit preempt all the ways that networks may be improved, nor do the Patents-In-Suit preempt any other well-known or prior art technology.   The Patents-In-Suit disclose and claim specific solutions to specific technological problems that companies have only begun to attempt to address years later.

30.    The claims in the Patents-In-Suit recite combinations of elements sufficient to ensure that each claim in substance and in practice amounts to significantly more than a patent-ineligible abstract idea.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 9,496,930

31.     The allegations set forth in the foregoing paragraphs are incorporated into this
First Claim for Relief.

32.     On November 25, 2015, Roc Lastinger, John Spenik, and Brian C. Woodbury
filed United States Patent Application No. 14/952,850 ("the '850 Application").  On November
15, 2016, the '850 Application was duly and legally issued by the United States Patent and
Trademark Office as the '930 patent under the title "Methods and Apparatus for Overlapping
MIMO Physical Sectors."

33.     Woodbury Wireless is the assignee and owner of the right, title and interest in and
to the '930 patent, including the right to assert all causes of action arising under said patents and
the right to any remedies for infringement of them.

34.     The '930 patent is valid and enforceable.  A true and correct copy of the '930
patent is attached hereto as Exhibit A.

35.     Upon information and belief, T-Mobile has and continues to directly infringe one
or more claims of the '930 patent without authority by making, using (including without
limitation testing), selling, importing, and/or offering to sell products and systems, including by
way of example, the T-Mobile Wireless Network, the T-Mobile 5G Network, T-Mobile's
provision of related services and access to its 5G Network, and T-Mobile's WiFi products and
services—which include, but are not limited to, for example the T-Mobile 5G Hotspot, the MiFi
X Pro 5G hotspot, and the T-Mobile 5G Gateway–business, and the provision of services
associated with these devices (exemplary Accused Instrumentalities).  (*See* Claim Chart for the
'930 patent, attached hereto as Exhibit H.)

36.     T-Mobile has and continues to directly infringe, either literally or under the
doctrine of equivalents, at least Claim 1 of the '930 patent by making, using (including without

limitation testing), selling, importing, and/or offering to sell the Accused Instrumentalities.  (*See* Exhibit H.)  As demonstrated by Exhibit H, each and every element of Claim 1 of the '930 patent is found in the exemplary Accused Instrumentalities.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by T-Mobile with respect to the '930 patent.  Woodbury Wireless reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '930 patent.

37.     T-Mobile has had actual knowledge of the '930 patent at least as early as the date of service of this Complaint.

38.     T-Mobile's acts of infringement have occurred within this District and elsewhere throughout the United States.

39.     Woodbury Wireless has been harmed by T-Mobile's infringing activities.

### COUNT II – INFRINGEMENT OF U.S. PATENT NO. 9,503,163

40.     The allegations set forth in the foregoing paragraphs are incorporated into this Second Claim for Relief.

41.     On September 3, 2014, Roc Lastinger, John Spenik, and Brian C. Woodbury filed United States Patent Application No. 14/476,628 ("the '628 Application").  On November 22, 2016, the '628 Application was duly and legally issued by the United States Patent and Trademark Office as the '163 patent under the title "Methods and Apparatus for Overlapping MIMO Physical Sectors."

42.     Woodbury Wireless is the assignee and owner of the right, title and interest in and to the '163 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

43.     The '163 patent is valid and enforceable.  A true and correct copy of the '163 patent is attached hereto as Exhibit B.

44.     Upon information and belief, T-Mobile has and continues to directly infringe one or more claims of the '163 patent without authority by making, using (including without limitation testing), selling, importing, and/or offering to sell products and systems, including by way of example, the exemplary Accused Instrumentalities.  (*See* Claim Chart for the '163 patent, attached hereto as Exhibit I.)

45.     T-Mobile has and continues to directly infringe, either literally or under the doctrine of equivalents, at least Claim 2 of the '163 patent by making, using (including without limitation testing), selling, importing, and/or offering to sell the Accused Instrumentalities.  (*See* Exhibit I.)  As demonstrated by Exhibit I, each and every element of Claim 2 of the '163 patent is found in the Accused Instrumentalities.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by T-Mobile with respect to the '163 patent.  Woodbury Wireless reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '163 patent.

46.     T-Mobile has had actual knowledge of the '163 patent at least as early as the date of service of this Complaint.

47.     T-Mobile's acts of infringement have occurred within this District and elsewhere throughout the United States.

48.     Woodbury Wireless has been harmed by T-Mobile's infringing activities.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 9,584,197

49.     The allegations set forth in the foregoing paragraphs are incorporated into this

Third Claim for Relief.

50.     On November 25, 2015, Roc Lastinger, John Spenik, and Brian C. Woodbury

filed United States Patent Application No. 14/952,874 ("the '874 Application").  On February

28, 2017, the '874 Application was duly and legally issued by the United States Patent and

Trademark Office as the '197 patent under the title "Methods and Apparatus for Overlapping

MIMO Physical Sectors."

51.     Woodbury Wireless is the assignee and owner of the right, title and interest in and

to the '197 patent, including the right to assert all causes of action arising under said patents and

the right to any remedies for infringement of them.

52.     The '197 patent is valid and enforceable.  A true and correct copy of the '197

patent is attached hereto as Exhibit C.

53.     Upon information and belief, T-Mobile has and continues to directly infringe one

or more claims of the '197 patent without authority by making, using (including without

limitation testing), selling, importing, and/or offering to sell products and systems, including by

way of example, the exemplary Accused Instrumentalities.  (*See* Claim Chart for the '197 patent,

attached hereto as Exhibit J.)

54.     T-Mobile has and continues to directly infringe, either literally or under the

doctrine of equivalents, at least Claim 1 of the '197 patent by making, using (including without

limitation testing), selling, importing, and/or offering to sell the exemplary Accused

Instrumentalities.  (*See* Exhibit J.)  As demonstrated Exhibit J, each and every element of Claim

1 of the '197 patent is found in the exemplary Accused Instrumentalities.  This infringement

analysis is necessarily preliminary, as it is provided in advance of any discovery provided by T-

Mobile with respect to the '197 patent.  Woodbury Wireless reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '197 patent.

55.     T-Mobile has had actual knowledge of the '197 patent at least as early as the date of service of this Complaint.

56.     T-Mobile's acts of infringement have occurred within this District and elsewhere throughout the United States.

57.     Woodbury Wireless has been harmed by T-Mobile's infringing activities.

### COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 9,859,963

58.     The allegations set forth in the foregoing paragraphs are incorporated into this Fourth Claim for Relief.

59.     On January 13, 2017, Roc Lastinger, John Spenik, and Brian C. Woodbury filed United States Patent Application No. 15/406,661 ("the '661 Application").  On January 2, 2018, the '661 Application was duly and legally issued by the United States Patent and Trademark Office as the '963 patent under the title "Methods and Apparatus for Overlapping MIMO Physical Sectors."

60.     Woodbury Wireless is the assignee and owner of the right, title and interest in and to the '963 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

61.     The '963 patent is valid and enforceable.  A true and correct copy of the '963 patent is attached hereto as Exhibit D.

62.     Upon information and belief, T-Mobile has and continues to directly infringe one or more claims of the '963 patent without authority by making, using (including without

limitation testing), selling, importing, and/or offering to sell products and systems, including by way of example, the exemplary Accused Instrumentalities.  (*See* Claim Chart for the '963 patent, attached hereto as Exhibit K.)

63.     T-Mobile has and continues to directly infringe, either literally or under the doctrine of equivalents, at least Claim 1 of the '963 patent by making, using (including without limitation testing), selling, importing, and/or offering to sell the exemplary Accused Instrumentalities.  (*See* Exhibit K.)  As demonstrated by Exhibit K, each and every element of Claim 1 of the '963 patent is found in the exemplary Accused Instrumentalities.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by T-Mobile with respect to the '963 patent.  Woodbury Wireless reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '963 patent.

64.     T-Mobile has had actual knowledge of the '963 patent at least as early as the date of service of this Complaint.

65.     T-Mobile's acts of infringement have occurred within this District and elsewhere throughout the United States.

66.     Woodbury Wireless has been harmed by T-Mobile's infringing activities.

## COUNT V – INFRINGEMENT OF U.S. PATENT NO. 10,211,895

67.     The allegations set forth in the foregoing paragraphs are incorporated into this Fifth Claim for Relief.

68.     On September 1, 2018, Roc Lastinger, John Spenik, and Brian C. Woodbury filed United States Patent Application No. 16/120,258 ("the '258 Application").  On February 19,

2019, the '258 Application was duly and legally issued by the United States Patent and Trademark Office as the '895 patent under the title "MIMO Methods and Systems."

69.    Woodbury Wireless is the assignee and owner of the right, title and interest in and to the '895 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

70.    The '895 patent is valid and enforceable.  A true and correct copy of the '895 patent is attached hereto as Exhibit E.

71.    Upon information and belief, T-Mobile has and continues to directly infringe one or more claims of the '895 patent without authority by making, using (including without limitation testing), selling, importing, and/or offering to sell products and systems, including by way of example, the exemplary Accused Instrumentalities.  (*See* Claim Chart for the '895 patent, attached hereto as Exhibit L.)

72.    T-Mobile has and continues to directly infringe, either literally or under the doctrine of equivalents, at least Claim 1 of the '895 patent by making, using (including without limitation testing), selling, importing, and/or offering to sell the exemplary Accused Instrumentalities.  (*See* Exhibit L.)  As demonstrated by Exhibit L, each and every element of Claim 1 of the '895 patent is found in the exemplary Accused Instrumentalities.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by T-Mobile with respect to the '895 patent.  Woodbury Wireless reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '895 patent.

73.    T-Mobile has had actual knowledge of the '895 patent at least as early as the date of service of this Complaint.

74.    T-Mobile's acts of infringement have occurred within this District and elsewhere throughout the United States.

75.    Woodbury Wireless has been harmed by T-Mobile's infringing activities.

## COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 10,516,451

76.    The allegations set forth in the foregoing paragraphs are incorporated into this Sixth Claim for Relief.

77.    On January 9, 2019, Roc Lastinger, John Spenik, and Brian C. Woodbury filed United States Patent Application No. 16/243,421 ("the '421 Application").  On December 24, 2019, the '421 Application was duly and legally issued by the United States Patent and Trademark Office as the '451 patent under the title "MIMO Methods."

78.    Woodbury Wireless is the assignee and owner of the right, title and interest in and to the '451 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

79.    The '451 patent is valid and enforceable.  A true and correct copy of the '451 patent is attached hereto as Exhibit F.

80.    Upon information and belief, T-Mobile has and continues to directly infringe one or more claims of the '451 patent without authority by making, using (including without limitation testing), selling, importing, and/or offering to sell products and systems, including by way of example, the exemplary Accused Instrumentalities.  (*See* Claim Chart for the '451 patent, attached hereto as Exhibit M.)

81.    T-Mobile has and continues to directly infringe, either literally or under the doctrine of equivalents, at least Claim 1 of the '451 patent by making, using (including without

limitation testing), selling, importing, and/or offering to sell the Accused Instrumentalities.  (*See* Exhibit M.)  As demonstrated by Exhibit M, each and every element of Claim 1 of the '451 patent is found in the exemplary Accused Instrumentalities.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by T-Mobile with respect to the '451 patent.  Woodbury Wireless reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '451 patent.

82.    T-Mobile has had actual knowledge of the '451 patent at least as early as the date of service of this Complaint.

83.    T-Mobile's acts of infringement have occurred within this District and elsewhere throughout the United States.

84.    Woodbury Wireless has been harmed by T-Mobile's infringing activities.

## COUNT VII – INFRINGEMENT OF U.S. PATENT NO. 11,108,443

85.    The allegations set forth in the foregoing paragraphs are incorporated into this Seventh Claim for Relief.

86.    On May 22, 2019, Roc Lastinger, John Spenik, and Brian C. Woodbury filed United States Patent Application No. 16/420,133 ("the '133 Application").  On August 31, 2021, the '133 Application was duly and legally issued by the United States Patent and Trademark Office as the '443 patent under the title "MIMO Methods and Systems."

87.    Woodbury Wireless is the assignee and owner of the right, title and interest in and to the '443 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

88.    The '443 patent is valid and enforceable.  A true and correct copy of the '443 patent is attached hereto as Exhibit G.

89.    Upon information and belief, T-Mobile has and continues to directly infringe one or more claims of the '443 patent without authority by making, using (including without limitation testing), selling, importing, and/or offering to sell products and systems, including by way of example, the exemplary Accused Instrumentalities.  (*See* Claim Chart for the '443 patent, attached hereto as Exhibit N.)

90.    T-Mobile has and continues to directly infringe, either literally or under the doctrine of equivalents, at least Claim 1 of the '443 patent by making, using (including without limitation testing), selling, importing, and/or offering to sell the exemplary Accused Instrumentalities.  (*See* Exhibit N.)  As demonstrated by Exhibit N, each and every element of Claim 1 of the '443 patent is found in the exemplary Accused Instrumentalities.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by T-Mobile with respect to the '443 patent.  Woodbury Wireless reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '443 patent.

91.    T-Mobile has had actual knowledge of the '443 patent at least as early as the date of service of this Complaint.

92.    T-Mobile's acts of infringement have occurred within this District and elsewhere throughout the United States.

93.    Woodbury Wireless has been harmed by T-Mobile's infringing activities.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable as such.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment for itself and against Defendant as follows:

A.     An adjudication that Defendant has infringed the Patents-In-Suit;

B.     An award of damages to be paid by Defendant adequate to compensate Plaintiff for Defendant's past infringement of the Patents-In-Suit, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.     A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiff's reasonable attorneys' fees; and

D.     An award to Plaintiff of such further relief at law or in equity as the Court deems just and proper.

Dated: February 8, 2024

DEVLIN LAW FIRM LLC

*/s/  Chad Henson*
Clifford Chad Henson (Bar No. 24087711)
chenson@devlinlawfirm.com
Timothy Devlin
tdevlin@devlinlawfirm.com
Derek Dahlgren (*pro hac vice* to be filed)
ddahlgren@devlinlawfirm.com
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

*Attorneys for Plaintiff*
*Woodbury Wireless LLC*